**Original filed 10/26/06**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| WADE ROBERTSON,<br><br>Plaintiff,<br><br>v.<br><br>SHIRAZ QADRI, AVENIR RESTAURANT GROUP, INC. and GREG ST. CLAIRE,<br><br>Defendants. | Case Number C 06-04624 JF<br><br>ORDER[1] (1) GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND; AND (2) DENYING PLAINTIFF'S MOTION FOR ADMINISTRATIVE RELIEF<br><br>[re: docket no. 20, 27] |

Defendants Shiraz Qadri ("Qadri"), Avenir Restaurant Group, Inc. ("Avenir") and Greg St. Clarie ("St. Claire"), (collectively "Defendants") move to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. Plaintiff Wade Roberston ("Robertson") opposes the motion. The Court heard oral argument on October 13, 2006. For the reasons set forth below, the Court will grant the motion with leave to amend.

## I. BACKGROUND

On July 28, 2006, Robertson filed a complaint in this Court against Qadri, the general

[1] This disposition is not designated for publication and may not be cited.

manager of Nola's Restaurant and Bar ("Nola's"), seeking declaratory judgment, or in the alternative, damages for false imprisonment, slander, and intentional infliction of emotional distress arising out of the incident on April 28, 2006 described below. On August 18, 2006, Robertson filed an amended complaint against Qadri, Avenir (Nola's owner), and St. Claire (Avenir's owner). Robertson asserts claims arising from two incidents described below, one on April 28, 2006, and another on August 4, 2006. Regarding the first incident, Robertson seeks declaratory judgment regarding the "non-occurrence of tortious acts," and, in the alternative, damages for false imprisonment, false arrest, and respondeat superior liability.[2] Robertson also seeks damages for assault arising out of the second incident.[3]

**A. The April 28 Incident**

Robertson alleges the following. Qadri is the general manager of Nola's Resturant and Bar ("Nola's"), Avenir owns Nola's, and St. Claire owns Avenir. On the night of April 27, 2006, and the morning of April 28, 2006, Robertson was a patron at Nola's and hosted a party of seven people. At 12:35am Robertson wished to leave Nola's immediately and requested his final bill from Qadri who was behind the bar. At 12:39am Qadri printed Robertson's bill and presented it to him. Robertson immediately reported to Qadri a $90 discrepancy in the bill, claiming that he had already paid a waitress $100 for $10 in drinks and expected the change to be applied to his final bill. Qadri then stated that he did not believe Robertson and was going to check his story independently. Qadri also stated that he was taking back Robertson's credit card and instructed Robertson that he was to "stay right here . . . right here." Qadri also stated, "unless you want trouble . . . I've got your card," and he waved Robertson's card in the air toward a Nola's employee who appeared to be a bouncer standing near the doorway exit. Qadri left the bar area at approximately 12:43am. Robertson felt compelled to remain in the restaurant as a result of Qadri's statements and actions, contrary to his will to leave.

---

[2] "Respondeat superior liability" does not constitute an independent claim for relief.

[3] Robertson also seeks damages for intentional infliction of emotional distress with his claims for false imprisonment, false arrest and assault.

According to an electronic timestamp, a second bill was printed at 12:45am with a new total reflecting a $90 reduction. However, Qadri did not return to Robertson and deliver the new bill until 1:00am. Robertson signed the bill and left Nola's. As Robertson exited he noticed a police officer in a police vehicle staring continuously at him. Robertson entered his vehicle and drove away, but was immediately followed and pulled over by the police officer. The police officer then arrested Robertson for driving under the influence of alcohol. Roberston was detained by the police in excess of twelve hours.

The police officer filed several police reports alleging facts in support of his determination that he had probable cause for Robertson's arrest without a warrant. The first report, dated April 28, 2006, states that a man identifying himself as Nola's general manager flagged down the police officer and expressed concern that a few of his intoxicated patrons might drive away from the area. He then pointed to a man in a Hawaiian shirt, saying that he had been drinking heavily in the bar. The police officer saw the man in the Hawaiian shirt standing near a pickup truck and a few minutes later saw that someone was driving the truck. Shortly thereafter the officer pulled the truck over and found that the driver was the same Hawaiian-shirted man. A subsequent police report, dated April 29, 2006, states that the police officer later contacted and interviewed Qadri. In the interview Qadri confirmed that Robertson was the Hawaiian-shirted man that he had warned the officer about. Qadri stated that Robertson had been drinking for several hours in the bar and was "pretty intoxicated" when he paid his bill. The police report indicates that Qadri tried to call a taxi for Robertson because he knew that Robertson was too intoxicated to drive safely, which is why Qadri flagged the police officer down.

Robertson alleges that he hired a private investigator to meet and confer with Qadri regarding the events alleged above. Qadri declined either to admit or to deny if the events described in the police report in fact occurred.

**B. The August 4 Incident**

Robertson alleges via affidavits attached to his amended complaint that the following incident occurred on the evening of August 4, 2006. Robertson delivered legal work to his client Timothy Gray ("Gray") at Gray's office which is located adjacent to Nola's. A number of Gray's

colleagues and social acquaintances arrived in Gray's office, and food was delivered (from Nola's) for the group. At 8:45pm Gray responded to a violently loud knock at the door and stepped outside of the office, closing the door behind him while his guests, including Robertson, waited inside. The people outside included Qadri, St. Claire and another man, allegedly a chef and part-owner of Nola's. Robertson heard yelling on the other side of the closed door including the phrases, "Is Wade Robertson in there? . . . Did you know that prick is suing us? . . . I want you to get him out of there now! . . . And you tell him that I'm going to come after him with everything I've got!" Robertson became seriously concerned for his physical safety and feared that the people outside the door were either going to come into the office and physically hurt him, or that they were waiting for him to step out so they could physically hurt him. One of Gray's other guests went outside to assist Gray and the two later returned. Gray instructed everyone to leave the premises but asked them to wait for him for safety reasons. Gray left to settle the catering bill for the food that had been delivered to his office. Upon his return Gray informed the group that they had all been "banned" from Nola's. The group then left Gray's office without incident.

## II. LEGAL STANDARD

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 581 (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are

referenced extensively in the complaint and which are accepted by all parties as authentic, which are not physically attached to the complaint. *In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999).

## III. DISCUSSION

### A. Claim for Declaratory Relief

Robertson seeks a declaratory judgment that Qadri did not make statements to the police as alleged in the police report referenced in Robertson's amended complaint. Defendants assert that declaratory relief is inappropriate because there is no justiciable or actual controversy that requires clarification of legal issues and because there is a pending criminal case against Robertson in the Santa Clara Superior Court.[4]

Declaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d 229, 231 (9th Cir. 1989) (quoting *Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462, 1470 (9th Cir.1984)). The purpose of declaratory relief is to enable parties to adjudicate their disputes before either suffers great damage. *See*

[4] Defendants request judicial notice of the court file, including police reports, relating to the criminal case currently pending against Robertson. Robertson references the police reports extensively in his amended complaint, but opposes judicial notice of these documents on the basis that Defendants have not properly authenticated them. Robertson also asserts that police reports are not judicially noticeable pursuant to Ninth Circuit and California Supreme Court authority. However a court may take judicial notice of the *existence* (as distinctly separate from the *truth*) of a document filed in another court to establish the fact of such litigation and related filings. *See Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir. 2001) (noting that on a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity). The Court therefore grants the request for judicial notice as to the fact of the existence of a pending criminal case against Robertson. On October 6, 2006, Robertson filed a motion for administrative relief to strike Defendant's request for judicial notice because their papers violate Civil Local Rule 3-17. The motion is denied because Defendants have offered to file a stipulation and proposed order regarding the redaction of Robertson's personal information on file.

*Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981) (holding that declaratory relief advances to present a litigable controversy which otherwise might only be tried in the future).

In 1971 the Supreme Court articulated a national policy forbidding federal courts from staying or enjoining pending state proceedings. *Younger v. Harris*, 401 U.S. 37, 41 (1971). The Ninth Circuit has since explained that the *Younger* abstention doctrine precludes federal injunctive relief and declaratory relief in the context of pending state criminal matters. *Partington v. Gedan*, 961 F.2d 852, 861 (9th Cir. 1992). Practicality and administrative considerations also generally counsel against the exercise of federal declaratory relief jurisdiction in cases that involve only state law questions and are brought during the pendency of related state court proceedings. *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 754 (9th Cir. 1996) *overruled on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1227 (9th Cir. 1998).

In light of the pending criminal case against Robertson in state court, the Court declines to exercise declaratory relief jurisdiction over Robertson's claim. The Court therefore will grant Defendants' motion to dismiss as to Robertson's claim for declaratory relief.

**B. Claims for Damages**

Alternatively, Robertson asserts tort claims for false imprisonment false arrest, and assault. Robertson includes intentional infliction of emotional distress in each of these claims.

***(1) False Imprisonment and False Arrest***

Robertson's claim for false imprisonment alleges that Defendants confined him at the bar for seventeen minutes by means of threatening comments and actions and by withholding his property while Qadri contacted the police and identified Robertson. Robertson's claim for false arrest alleges that Qadri conducted a de facto citizen's arrest by confining Robertson at the bar until Qadri could transfer custody of Robertson to the police after making false accusations.

Defendants assert that the conduct and statements attributed to them that give rise to Robertson's false imprisonment and false arrest claims are absolutely privileged by Cal. Civ.

Code § 47(b). Defendants also assert that false imprisonment and false arrest do not constitute separate claims for relief. Robertson contends that § 47(b) immunity applies only to communications, not conduct. Robertson further contends that two separate claims are proper because there are significant pleading differences between false imprisonment and false arrest.

As formulated by the California Supreme Court, the tort of false imprisonment consists of the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short. *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994). False arrest and false imprisonment are not separate torts in that false arrest is but one way of committing a false imprisonment. *Collins v. San Francisco*, 50 Cal. App. 3d 671, 673 (1975).

Cal Civ. Code § 47(b) states that a privileged publication or broadcast is one made in any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law. When a citizen contacts law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond, the communication enjoys an unqualified privilege under section 47(b). *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 364 (2004). However, this privilege protects only publications and communications and therefore a threshold issue in determining the applicability of the privilege is whether the defendant's conduct was communicative or noncommunicative. *Kimmel v. Goland*, 51 Cal. 3d 202, 211 (1990). The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006). The key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature. *Id.*

As currently pled, Robertson's alleged injury in both his claims hinges essentially and entirely on Qadri's alleged communications to the police officer. The § 47(b) privilege therefore applies to Defendants' alleged conduct. As indicated by the Court at oral argument, Robertson must separate Defendants' privileged communications from any alleged non-privileged conduct.

***(2) Assault***

Defendants also contend that Robertson has failed to establish a claim for relief for

assault. In order to state a cause of action for assault a plaintiff must establish (1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact. *Brooks v. U.S.*, 29 F. Supp. 2d 613, 617 (N.D.Cal. 1998) *aff'd*, 162 F.3d 1167 (9th Cir. 2004). Assault is a tort of specific intent and a plaintiff must prove that defendant intended to place plaintiff in a reasonable apprehension of harmful or offensive contact. *Id.* The crime of assault requires the present ability to commit a violent injury on another person. Cal. Pen. Code § 240. In civil actions for assault, the courts have applied the definition of criminal assault and relied on criminal cases in rendering their decisions. *See McChristian v. Popkin*, 75 Cal. App. 2d 249 (1946). However, the tort of assault is not defined by statute, and thus the court is afforded the opportunity to extend the concept of the tort beyond the limits placed on the corresponding crime by its statutory definition. *Lowry v. Standard Oil Co. of Cal.*, 63 Cal. App. 2d 1 (1944).

When Defendants were allegedly shouting outside Gray's office, Robertson was inside and behind a closed door. The alleged facts would not give rise to a *reasonable* apprehension of harmful or offensive contact. Robertson therefore has not adequately pled a claim for relief for the tort of assault.

***(3) Intentional Infliction of Emotional Distress***

Robertson claims intentional infliction of emotional distress within his claims for false imprisonment, false arrest and assault. Defendants assert that Robertson has not properly pled intentional infliction of emotional distress. Alternatively, Defendants assert that their alleged conduct is privileged and did not rise to the level necessary for liability.

In order to state a cause of action for the intentional infliction of emotional distress, a plaintiff must show (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress. *Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal. 3d 148, 155 n. 7 (1987). Only conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress is actionable. *Id.*

Robertson's assertions regarding the intentional infliction of emotional distress are scattered among other claims for relief. The Court therefore cannot presently perceive a cognizable claim for relief for intentional infliction of emotional distress.

**III. ORDER**

Good cause therefore appearing, IT IS HEREBY ORDERED that the motion to dismiss is GRANTED with leave to amend. Any second amended complaint must be filed on or before November 15, 2006; the motion for administrative relief is DENIED.

DATED: 10/25/06

JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Patrick C. Kerwin & Leslie Mark Gammill
Kerwin & Kerwin, LLP
968 Woodside Rd.
P.O. Box 610148
Redwood City, CA 94061

Wade Robertson
P.O. Box 20185
Stanford, CA 94309